**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X       **Docket No.**  22-cv-10488
ALICIA BLOISE,

|  |  |
|---|---|
| *Plaintiff,* | **COMPLAINT** |
| -against- | **PLAINTIFF DEMANDS** |
| Q4 GENERATIONAL WEALTH, INC. *d/b/a* CALIENTES RESTAURANT & BAR, MELANIE BURGOS, *In Her Individual and Official Capacities,* and JAHEE BRIDGEWATER, *In His Individual and Official Capacities,* | **A TRIAL BY JURY** |
| *Defendants.* | |

-----------------------------------------------------------X

Plaintiff ALICIA BLOISE ("PLAINTIFF"), by her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the CALIENTE'S DEFENDANTS, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), 42 U.S.C. §1981; the New York Human Rights Law, 15 N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq.*  ("NYCHRL"), and seeks damages to redress the injuries she has been suffering as a result of being discriminated against and subjected to a hostile work environment on the basis of her **race/color** (African American/black), **sex/gender** (female), **actual or perceived disability** (anxiety and depression), and **caregiver status.**

2. In addition, this is a civil action based upon violations that DEFENDANTS, Q4

1

GENERATIONAL WEALTH, INC. and CALIENTES committed against PLAINTIFF as guaranteed to her by New York Labor Laws §195(3); and any other claim(s) that can be inferred from the facts set forth herein. In short, DEFENDANT CALIENTES paid PLAINTIFF "off the books" and did not provide PLAINTIFF with any documentation regarding wages, taxes, pay stubs or tax documents, in violation of the New York Labor Laws.

3.    PLAINTIFF ALICIA BLOISE was employed by CALIENTES as a "bartender", until she was wrongfully terminated as described below.

4.    From the day that PLAINTIFF began working at CALIENTES, PLAINTIFF was subjected to ongoing and continuous racially based hostile work environment because she is African American/Black. Specifically, PLAINTIFF was subjected to discriminatory insults, differential treatment, and ignored by her co-workers and certain promoters working at DEFENDANT CALIENTES.

5.    Among other things, PLAINTIFF'S supervisor and co-workers frequently referred to PLAINTIFF as **"the black girl"** and **"the ghetto black girl"** and said **"nigger/nigga"** daily and often in the workplace around and in PLAINTIFF's presence.

6.    When PLAINTIFF called out of work to attend to a family emergency, she was taken off CALIENTES' schedule in retaliation.

7.    Finally, four days later, after hearing nothing from CALIENTES about her schedule, PLAINTIFF received a text message from her supervisor and co-owner of CALIENTES, DEFENDANT MELANIE BURGOS, containing racially and sexually humiliating epithets and insults, including **"whore"**, **"you take multiple dicks"**, and **"fake smile like your weave."** DEFENDANTS even went to far as to accuse PLAINTIFF of **sleeping around with customers** for ***"crab legs."***

8.      In addition, PLAINTIFF'S supervisor, DEFENDANT MELANIE BURGOS, poked fun at PLAINTIFF'S perceived mental state, and/or perceived disability, ridiculing PLAINTIFF due to her purported, **"maniac depression"** disability. This conduct by CALIENTE'S DEFENDANTS against PLAINTIFF was just more of the same discriminatory treatment that PLAINTIFF faced during her employment at CALIENTES.

9.      DEFENDANTS, including DEFENDANT MELANIE BURGOS, was so comfortable having an perpetuating a discriminatory work environment that she did not hesitate to callously evince same in writing, at and toward PLAINTIFF, simply because PLAINTIFF took a day off from work to attend to her caregiver responsibilities.

10.     PLAINTIFF ALICIA BLOISE asserts that CALIENTES allowed an intolerable work environment to exist that was permeated with discrimination and retaliation against PLAINTIFF simply because of her **race/color, sex/gender, actual and perceived disability, and caregiver status.**

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

11.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1981, and 28 U.S.C. §§ 1331 and 1343.

12.     The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this Southern District of New York pursuant to 28 U.S.C. § 1391(b) as one or more CALIENTE'S DEFENDANTS reside within the Eastern District of New York or the acts complained of occurred therein.

14.     By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") July 28, 2022 (b) receiving a Notice of Right to Sue from the EEOC on November 22, 2022 (c) commencing this action within

90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

**PARTIES**

15. **Plaintiff ALICIA BLOISE (hereinafter "PLAINTIFF")** is a 32-year-old African American female and is a resident of the State of New York, Bronx County. At all times relevant, PLAINTIFF was employed by Defendants CALIENTES and/or Q4 GENERATIONAL WEALTH, INC. as a Bartender.

16. **Defendant CALIENTES** is a restaurant and bar establishment and corporation, organized and existing under the laws of the State of New York. Upon information and belief, DEFENDANT CALIENTES is owned, operated and controlled by DEFENDANT Q4 GENERATIONAL WEALTH, INC. **(hereinafter referred to as "DEFENDANT Q4")**. CALIENTES is located at 414 City Island Ave, Bronx, NY 10464.

17. Upon information and belief, Defendants CALIENTES and Q4 employs fifteen or more employees collectively and or individually.

18. Defendants CALIENTES and Q4 were joint employers over PLAINTIFF insofar as Defendants operate under the same management and managers, in the same location. Insofar as Defendants have human resources policies, Defendants are guided by the same human resources and management.

19.   Upon information and belief, **Defendant MELANIE BURGOS (hereinafter referred to as "DEFENDANT BURGOS"),** is a co-owner and manager of/at Defendants CALIENTE'S and Q4. Defendant BURGOS was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant BURGOS had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

20.   Upon information and belief, Defendant **JAHEE BRIDGEWATER (hereinafter "DEFENDANT BRIDGEWATER")** is a co-owner and manager of/at Defendants CALIENTE'S and Q4. Defendant BRIDGEWATER was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant BRIDEWATER had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same.

21.   **DEFENDANTS, CALIENTE'S, Q4, BURGOS and BRIDGEWATER are collectively referred to together as "CALIENTE'S DEFENDANTS."**

<u>**MATERIAL FACTS**</u>

22.   PLAINTIFF began working for DEFENDANT CALIENTES in or around November 27th, 2021, as a Bartender.

23.   From the outset, CALIENTES DEFENDANTS began to subject PLAINTIFF to unlawful terms and conditions of employment.

**CALIENTES DEFENDANTS Failed To Provide Documents or Records of Employment And/Or Wages and Failed To Have A Recordkeeping System In Place:**

24.   From November 27, 2021, until PLAINTIFF'S unlawful termination on May 19, 2022, CALIENTES DEFENDANTS failed to provide PLAINTIFF with paystubs and/or proof of wages as required by the New York Labor Laws("<u>NYLL</u>").

25.   DEFENDANTS paid PLAINTIFF, and every other employee at DEFENDANT

CALIENTES, **in cash and off the books**.

26. In paying its employees, including PLAINTIFF, DEFENDANTS did not include proof of payment, proof of hours worked, records regarding wages/tips, tax documents, or pay stubs in any form.

27. Indeed, two weeks after PLAINTIFF began working at DEFENDANT CALIENTES, and when DEFENDANT BURGOS handed PLAINTIFF her first payment, PLAINTIFF asked DEFENDANT BURGOS for a paystub.

28. DEFENDANT BURGOS, however, denied PLAINTIFF'S request explaining that its easier for her and DEFENDANT BRIDGEWATER to pay their employees in cash. By DEFENDANT BURGOS' tone of voice and body language, it was clear to PLAINTIFF that getting a paystub was not up for further discussion.

29. Indeed, as of the date of this Complaint, DEFENDANTS did not properly report PLAINTIFF'S (or any other employees') employment at DEFENDANT CALIENTES and did not properly report PLAINTIFF'S wages to State and Federal governments, or to any taxing authority.

30. Upon information and belief, no taxes were taken from PLAINTIFF'S payments and no Form 1099 or Form W-2 was provided to PLAINTIFF as proof of income.

31. CALIENTE DEFENDANTS have no formal or informal system in place to properly report employee work hours and/or to record same.

32. Upon information and belief, CALIENTE DEFENDANTS unlawfully pay each and every employee "under the table" and do not supply any employee with proper documentation of earnings, tips, work hours, taxes, deductions, etc.

33. DEFENDANTS will not be able to provide such documents to PLAINTIFF as of the date of this Complaint because DEFENDANTS did not properly document or record any of

PLAINTIFF'S hours or pay information, nor did DEFENDANTS maintain employment records for PLAINTIFF.

34. As such, upon information and belief, CALIENTES DEFENDANTS never notified the State, City or Federal Governments that PLAINTIFF was ever employed at DEFENDANT CALIENTES, in violation of federal, state, and city labor laws.

**CALIENTES DEFENDANTS Subjected PLAINTIFF To Discriminatory <u>Treatment, Retaliation, And An Unlawful Termination</u>**

35. At all relevant times, PLAINTIFF was the only African American working at DEFENDANT CALIENTES. DEFENDANT CALIENTES' employee demographic was otherwise made up of only Hispanic and/or Latino employees.

36. Starting in or around early November 27th, 2021, until her unlawful termination on May 19, 2022, PLAINTIFF was exposed to a constant and continuous hostile work environment wherein she was subjected to a plethora of degrading epithets and insults made by DEFENDANT BURGOS and her employees, related to PLAINTIFF'S race/color (African American/black) and sex/gender (female) and disability (anxiety and depression).

37. The discrimination and harassment were pervasive, taking place on an almost daily basis throughout PLAINTIFF'S employment.

38. By way of example, throughout PLAINTIFF'S employment at Defendant CALIENTES, PLAINTIFF'S co-workers and bartenders, "Eileen" last name unknown, and another coworker, "Rose" last name unknown, would talk badly about PLAINTIFF and use Spanish racial slurs that means **"black girl"** or **"the ghetto black girl"** when referring to PLAINTIFF.

39. In fact, on or about January 15, 2022, a customer, named "Chris", who had been sitting at the bar listening to Eileen and Rose as they spoke about PLAINTIFF, became visibly annoyed, and said to PLAINTIFF in sum or substance: *"do you know that they're*

*[pointing at Eileen and Rose] talking about you?!"*

40.  PLAINTIFF asked, *"What are they saying?"*

41.  Chris said in sum or substance: ***"They're referring to you as the black girl but in a racially disrespectful way…they're mad racist here!"***

42.  Wanting to sound unbothered, PLAINTIFF responded that she was, *"aware that everybody was saying racist things about [her], but I just ignore it."*

43.  As PLAINTIFF was new and wanted to keep her employment, PLAINTIFF did not complain about the racially hostile work environment.

44.  But also, the racial epithets and disrespect against PLAINTIFF often took place in front of, and/or with the knowledge of, DEFENDANT BURGOS, who allowed same to occur unabated.

45.  Nevertheless, it still hurt PLAINTIFF very much to hear that Eileen and Rose were talking about her in racially derogatory ways.

46.  It hurt PLAINTIFF even more knowing that a customer witnessed them disparaging PLAINTIFF and that the two were comfortable enough to engage in said racist behavior in front of customers.

47.  In addition, Eileen and Rose often rolled their eyes at PLAINTIFF, gave PLAINTIFF intimidating looks, and were unnecessarily harsh with PLAINTIFF whenever PLAINTIFF worked the bar.

48.  On a daily basis, PLAINTIFF tried her best to ignore Eileen and Rose and focus on her customers.

49.  Eileen and Rose, however, were not the only ones that referred to PLAINTIFF as ***"the ghetto black girl."***

50.  Shockingly, DEFENDANT BURGOS also called PLAINTIFF ***"the ghetto black girl"***

both in and outside of PLAINTIFF'S presence.

51.   When PLAINTIFF protested the use of the racial slurs, DEFENDANT BURGOS would only apologize for Eileen and Rose, saying: **"you're pretty, just push through [the night],"** while completely ignoring PLAINTIFF'S concerns about discrimination in the workplace at CALIENTES.

52.   Because DEFENDANT BURGOS was the owner of DEFENDANT CALIENTES, and treated discrimination at CALIENTES like it was nothing serious, PLAINTIFF had no avenue of recourse to complain about the discrimination and was forced to endure it.

53.   DEFENDANT BURGOS' conduct was the type that would dissuade a reasonable employee from complaining about discrimination at CALIENTES.

54.   At all times, DEFENDANT BURGOS, who was the owner and manager at CALIENTES, knew or should have known that her use of, as well as allowing her employees to use, racial epithets in the workplace was unlawful.

55.   PLAINTIFF was also forced to endure DEFENDANT BURGOS, Eileen, and Rose saying **"nigger/niggah"** on a daily basis at DEFENDANT CALIENTES.

56.   CALIENTE DEFENDANTS regularly allowed the use of the N-word in the facility and did not care that same was improper for the workplace.

57.   As an African American, PLAINTIFF felt annoyed, upset, and offended that DEFENDANT BURGOS, Eileen, and Rose were using the n-word around PLAINTIFF and customers.

58.   PLAINTIFF, however, did not complain to DEFENDANTS about the staff-wide use of the n-word in the workplace, for fear that DEFENDANT BURGOS and her co-workers would become more hostile toward her in retaliation for making a complaint.

59.   DEFENDANT BURGOS knew or should have known that saying the *"n-word"*, a

racially charged word historically rooted in the oppression of Black people, and allowing her employees to say the *"n-word"* in the workplace was unlawful and a violation of PLAINTIFF'S rights.

60.     Even if DEFENDANT BURGOS used the N-word outside of CALIENTES, DEFENDANT BURGOS should have known that the use of same was unlawful inside the workplace.

61.     In addition to DEFENDANT BURGOS, the bartenders, the promoters (names unknown), who are all Hispanic/Latino, also treated PLAINTIFF with discriminatory hostility.

62.     For example, the promoters would not acknowledge PLAINTIFF when she walked by and refused to talk to her.

63.     By way of a second example, the promoters would not allow PLAINTIFF to make their drinks and refused anything PLAINTIFF offered them. Instead, the promoters would specifically request that DEFENDANT BURGOS or one of the other Latino/Hispanic bartenders make them drinks.

64.     On multiple occasions, CALIENTES promoters asked DEFENDANT BRIDGEWATER to take PLAINTIFF off of CALIENTES' schedule during their promotional and party event nights because PLAINTIFF is Black.

65.     DEFENDANT BRIDGEWATER informed PLAINTIFF of the same and offered PLAINTIFF some advice stating in sum or substance: ***"you know they're racist. Just ignore them."***

66.     PLAINTIFF understood DEFENDANT BRIDGEWATER'S statement to mean that he was not going to say anything to the promoters and did not care that the promoters did not like Black people.

67.     Indeed, upon information and belief, neither DEFENDANT BRIDGEWATER or

DEFENDANT BURGOS, spoke to the promoters about their discriminatory requests and took no remedial action to address the promoters' discriminatory behavior toward PLAINTIFF.

68.   At all times, DEFENDANTS BURGOS and BRIDGEWATER knew or should have known that the ongoing and continuous racially hostile work environment against PLAINTIFF was unlawful.

69.   In or about the end of April 2022, DEFENDANT BURGOS told PLAINTIFF that they were not going to hire a dark skin, African American woman that interviewed for a job at DEFENDANT CALIENTES.

70.   When PLAINTIFF asked DEFENDANT BURGOS why the woman was not hired, DEFENDANT BURGOS unapologetically told PLAINTIFF that the woman was ***"too dark and ugly."***

71.   PLAINTIFF was deeply offended by DEFENDANT BURGOS' comment.

72.   It became clear to PLAINTIFF that DEFENDANT BURGOS (much like the others at CALIENTES) harbored discriminatory feelings toward Black people.

73.   On or about Saturday, May 14, 2022, approximately three hours before she was scheduled to start her shift, PLAINTIFF sent a message to DEFENDANT BURGOS indicating that PLAINTIFF was calling out of work due to a family emergency.

74.   At all times prior to this day, DEFENDANT BURGOS knew that PLAINTIFF had elderly parents with ongoing health issues and concerns, and that PLAINTIFF was the caretaker of her parents.

75.   PLAINTIFF called out on this day due to her ongoing caretaker issues and responsibilities.

76.   DEFENDANT BURGOS did not respond to PLAINTIFF'S message.

77.    The following Tuesday, DEFENDANT CALIENTES took PLAINTIFF off the schedule in retaliation for PLAINTIFF calling out on Saturday, May 14th.

78.    Prior to PLAINTIFF calling out, PLAINTIFF always worked Tuesdays. So, CALIENTES' removal of PLAINTIFF from the schedule was odd.

79.    PLAINTIFF did not hear from DEFENDANT BURGOS about her schedule until on or about that Thursday afternoon, May 19th, when she noticed two back-to-back missed calls and a text message from DEFENDANT BURGOS.

80.    At approximately 2:06 p.m. that day, without any coercion from PLAINTIFF, DEFENDANT BURGOS texted PLAINTIFF a long, outrageously offensive message, attacking PLAINTIFF'S race and sex.

81.    Specifically, DEFENDANT BURGOS wrote:

> *"Don't be a **salty bitch…**I never new [sic] you was so jealous. Carry on being a fake designer wearing **whore. Just take your L the way you take multiple dicks.** You suck as a bartender that's why you don't make any money here. Clarisa just got here and she snatched all your customers. You can fuck with Clari or Rose. You're the third little piggy…**I have multiple customers that said you give it up the pussy for crab legs** it's not just your ex best friend saying that. So keep talking shit about me. All you doing is making me more popular. **Now go get vaccinated and get a job bum ass bitch."***

82.    PLAINTIFF was shocked, confused, and extremely insulted by DEFENDANT BURGOS' discriminatory communication.

83.    As an employer/manager, DEFENDANT BURGOS knew and/or should have known that the racially discriminatory and inappropriate sexual comments made to her employee (PLAINTIFF), based on PLAINTIFF'S race and gender were unlawful.

84.    Further, this message by DEFENDANT BURGOS was unprovoked, and not initiated or returned, by PLAINTIFF. So, PLAINTIFF could not understand why DEFENDANT BURGOS' suddenly made these discriminatory epithets and allegations.

85.    However, these messages were not surprising to PLAINTIFF, as this was the type of

work environment that DEFENDANT BURGOS allowed, supported and condoned against PLAINTIFF while PLAINTIFF worked at CALIENTES.

86. Though DEFENDANT BURGOS did not say that PLAINTIFF was "terminated," PLAINTIFF assumed same by DEFENDANT BURGOS' outrageous message.

87. PLAINTIFF was shocked that DEFENDANT BURGOS was firing her, in part, because of her race/color and gender – while making racially and sexually charged insults.

88. In an effort to not escalate DEFENDANT BURGOS' discriminatory verbal assault, as usual, PLAINTIFF did not return same.

89. PLAINTIFF texted DEFENDANT BURGOS back saying: *"Lmaooo youre so mad ewww your true colors are really really nasty yikes!!!"* *"As an employee [I'm going to sue] [sic] you for this message this is harassment thank you."*

90. In response, DEFENDANT BURGOS returned further unreasonable epithets, stating:

*"Your [sic] welcome…this is proof you a rat."*

*"Ratianna."*

*"Leo told us about you…you're the mad one. Your [sic] the one that gotta [sic] struggle to find employment dweeb"*

*"You can't afford lawyer money your [sic] a brokee."*

*"Fake smile like your weave"*

*"Your [sic] maniac [sic] depression is getting the best of you take care."*

*"Come fuck me up now…"*

*"Sike*."*

91. In response to PLAINTIFF asserting that she was going to take legal action for the discriminatory and abusive termination, DEFENDANT BURGOS referred to PLAINTIFF as a, *"rat"* in direct retaliation.

92.   In response to PLAINTIFF asserting that she was going to take legal action for the discriminatory and abusive termination, DEFENDANT BURGOS responded with further racial epithets, in direct retaliation.

93.   DEFENDANT BURGOS knew or should have known that insulting PLAINTIFF for making a protected complaint is unlawful and retaliatory.

94.   DEFENDANT BURGOS made the insulting reference to PLAINTIFF'S (alleged) **_"weave,"_ specifically** because PLAINTIFF is Black/African American.

95.   This was just another (retaliatory and discriminatory) racial epithet by BURGOS against her employee, PLAINTIFF.

96.   Very early on in her employment at DEFENDANT CALIENTE, PLAINTIFF disclosed to DEFENDANT BURGOS that PLAINTIFF'S parents are very sick (one parent is battling cancer while the other is having difficulty walking), which causes PLAINTIFF to feel depressed or anxious sometimes.

97.   PLAINTIFF disclosed to BURGOS that PLAINTIFF was a caretaker of her ill family members

98.   As such, DEFENDANT BURGOS was aware of PLAINTIFF'S caretaker status/responsibilities and PLAINTIFF'S distressed mental state related thereto.

99.   DEFENDANT BURGOS perceived that PLAINTIFF was suffering from anxiety and depression.

100.   DEFENDANT BURGOS' reference to PLAINTIFF (allegedly) suffering with **_"maniac (i.e. manic) depression"_** was based on BURGOS' perception that PLAINTIFF was actually suffering from these disabilities.

101.   DEFENDANT BURGOS knew, and was told by PLAINTIFF, that PLAINTIFF had anxiety and was depressed about her parents and their health situation; hence, BURGOS'

insulting and discriminatory reference to PLAINTIFF'S alleged "*maniac (i.e. manic)*

*depression."*

102.    As BURGOS perceived that PLAINTIFF was suffering from depression, BURGOS

decided to further insult PLAINTIFF due to a perceived disability, in violation of the

laws and statutes asserted herein.

103.    PLAINTIFF did not further respond to DEFENDANT BURGOS for fear that BURGOS

would continue hurling racial, sexual and other discriminatory insults at PLAINTIFF.

104.    PLAINTIFF felt frozen, staring at her phone, as she tried to remain calm despite being

terminated in the most hostile, discriminatory and retaliatory manner.

105.    In addition to feeling hurt about DEFENDANT BURGOS' personal attacks on her race

and gender/sex, PLAINTIFF felt particularly shaken up that DEFENDANT BURGOS

made fun of PLAINTIFF'S mental state, perceiving PLAINTIFF to be suffering from

*"manic depression"*  - a disability.

106.    Unfortunately, this was not the last time that PLAINTIFF heard from DEFENDANT

BURGOS.

107.    On or about May 25, 2022, DEFENDANT BURGOS decided to send more racially

discriminatory epithets to PLAINTIFF, once again unprovoked.

108.    Specifically, on 5/25/2022, DEFENDANT BURGOS texted PLAINTIFF saying, *"Dat*

*nigga dropped the fuk out of you,"* with a laughing emoji.

109.    It was not enough that DEFENDANT BURGOS unlawfully terminated PLAINTIFF'S

employment. DEFENDANT BURGOS then taunted and harassed PLAINTIFF for days

with discriminatory epithets, pursuant to her termination.

110.    PLAINTIFF kept and maintained all of DEFENDANT BURGOS' discriminatory and

unlawful communications to PLAINTIFF as proof.

111.   The above is just some of the incidents of harassment and discrimination that PLAINTIFF had to endure while working for DEFENDANT CALIENTES.

112.   CORPORATE DEFENDANTS CALIENTES and Q4 are strictly liable for the conduct of its managers, owners and representatives, including but not limited to DEFENDANTS BURGOS and BRIDGEWATER.

113.   INDIVIDUAL DEFENDANTS, as managers and employees of CALIENTES, were not trained or supervised with regard to discriminatory practices in the workplace – to the detriment of PLAINTIFF.

114.   INDIVIDUAL DEFENDANTS, as managers and employees of CALIENTES, did not train or prevent their subordinates from discriminatory practices, about which they were aware, at CALIENTES – to the detriment of PLAINTIFF.

115.   CALIENTE DEFENDANTS do not have antidiscrimination, antiharassment, or anti-sexual harassment policies, nor do they have policies related to hostile work environment or retaliation.

116.   CALIENTE DEFENDANTS never advised PLAINTIFF, or any other employee, with respect to how to address complaints of discrimination at CALIENTES.

117.   CALIENTE DEFENDANTS do not have a complaint procedure for employees to make complaints or address concerns about discriminatory practices at CALIENTES.

118.   INDIVIDUAL DEFENDANTS did not prevent or control known ongoing discrimination or the discriminatory hostile work environment at CALIENTES, to the detriment of PLAINTIFF.

119.   Even DEFENDANTS' wrongful termination of PLAINTIFF was discriminatory, retaliatory and hostile for days after PLAINTIFF stopped working at CALIENTES.

120.   Though PLAINTIFF was no longer employed at CALIENTES, that did not stop

CALIENTE DEFENDANTS from continuing to harass and discriminate against PLAINTIFF.

121.   CALIENTE DEFENDANTS' [mis]treatment of PLAINTIFF was motivated, in part or in whole, by PLAINTIFF'S sex/gender, race/color, perceived disabilities, caregiver status and engagement in protected activity.

122.   CALIENTES DEFENDANTS knew that PLAINTIFF was being subjected to a hostile work environment, but took no action to abate, control or prevent same.

123.   CALIENTES DEFENDANTS condoned, supported, ratified, and furthered the discriminatory and hostile conduct against PLAINTIFF.

124.   CALIENTES DEFENDANTS willingly ignored their obligations to prevent discrimination in the workplace - to the detriment of PLAINTIFF.

125.   CALIENTES DEFENDANTS' lack of action to help Plaintiff with regard to the open, obvious, and well-known harassive behavior, obviously fueled by animus toward Black and African Americans, meant that CALIENTES DEFENDANTS were acquiescing to the discrimination.

126.   The involvement of the owners and management of CALIENTES in the discriminatory and retaliatory conduct alleged herein is further proof that CALIENTES supported and condoned a discriminatory hostile work environment.

127.   Despite CALIENTES DEFENDANTS' clear knowledge of the discriminatory actions against PLAINTIFF, CALIENTE DEFENDANTS did not make any effort to remedy the situation.

128.   Throughout her employment, PLAINTIFF was humiliated, stressed, angered, and frustrated.

129.   CALIENTES DEFENDANTS allowed an environment to exist that was permeated with

discriminatory insults, ridicule, verbal assaults, race-sex-and-disability-based epithets, retaliation, and other unlawful acts against PLAINTIFF.

130. **COLLECTIVE DEFENDANTS' (individual and collective) conduct against PLAINTIFF was a <u>continuing violation</u> of the PLAINTIFF'S rights.**

131. CALIENTES DEFENDANTS' actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

132. As a result, PLAINTIFF was unlawfully humiliated, degraded and belittled, suffered violations of her rights, suffers mental and emotional distress, emotion pain, inconvenience, pain and suffering, humiliation, stress, anxiety, embarrassment, special damages and other emotional distress.

133. CALIENTES DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

134. Punitive damages are warranted against all CALIENTES DEFENDANTS.

**AS A FIRST CAUSE OF ACTION**
***DISCRIMINATION* UNDER TITLE VII**
**(Against DEFENDANT CALIENTE and Q4)**

135. PLAINTIFF repeats, reiterates and realleges the foregoing allegations made in the above paragraphs of this Complaint as if more fully set forth herein at length.

136. This claim is authorized and instituted pursuant to the provisions of <u>Title VII of the Civil Rights Act of 1964</u>, <u>42 U.S.C.</u> §2000e et seq., by discriminating against PLAINTIFF because of her race/color and sex/gender.

137. CALIENTES DEFENDANTS discriminated against the PLAINTIFF by subjecting PLAINTIFF to a continuous and pervasive hostile work environment on account of her race/color and subjecting PLAINTIFF to discriminatory treatment on account of her sex/gender (female).

138.    CALIENTES DEFENDANTS had no good faith business justification for any of the actions taken against PLAINTIFF.

139.    CALIENTES DEFENDANTS did not properly (if at all) train, instruct, or supervise DEFENDANTS BURGOS and BRIDGEWATER in discrimination or retaliation laws.

140.    As a direct result of CALIENTES DEFENDANTS' failure to train, supervise or instruct its managers/supervisors of the laws, PLAINTIFF was subjected to the unlawful conduct alleged herein.

141.    DEFENDANTS BURGOS and BRIDGEWATER were acting on behalf of their employer, DEFENDANT CALIENTE'S.

142.    At all times, DEFENDANTS BURGOS and BRIDGEWATER were acting pursuant to their authorities as owners, managers, and representatives of CALIENTES DEFENDANTS

143.    CALIENTES DEFENDANTS are strictly liable for the conduct of its managers and supervisors against PLAINTIFF.

144.    As a result of CALIENTES DEFENDANTS' discriminatory treatment of PLAINTIFF, PLAINTIFF suffered severe emotional distress.

145.    PLAINTIFF was unlawfully humiliated, degraded, belittled, and suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, etc.

146.    PLAINTIFF also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

147.    CALIENTES DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

148.   PLAINTIFF is entitled to the maximum damages allowed under this statute.

**AS A SECOND CAUSE OF ACTION**
***DISCRIMINATION* UNDER THE ADA**
*(Against DEFENDANT CALIENTES and Q4)*

149.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

150.   PLAINTIFF asserts that CALIENTES DEFENDANTS violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), *as amended.*

151.   Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states:

> (a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

152.   CALIENTES DEFENDANTS believed or **perceived** that PLAINTIFF had a disability.

153.   But for PLAINTIFF'S perceived disabilities - whether actual and/or perceived - CALIENTES DEFENDANTS would not have wrongfully terminated her employment.

154.   But for PLAINTIFF'S perceived disabilities - whether actual and/or perceived - CALIENTES DEFENDANTS would not have subjected PLAINTIFF to such a hostile and humiliating discriminatory termination.

155.   CALIENTES DEFENDANTS had no good-faith business justification for their actions against PLAINTIFF.

156.   CALIENTES DEFENDANTS engaged in an unlawful discriminatory practice by assuming that PLAINTIFF was disabled or had a disability, and then by taking adverse employment actions against PLAINTIFF based on same.

157.   CALIENTES DEFENDANTS engaged in an unlawful discriminatory practice by

20

terminating and chastising PLAINTIFF because of her disabilities, whether actual and/or perceived.

158. CALIENTES DEFENDANTS supported, condoned, and ratified the unlawful discriminatory conduct of its officers, directors, representatives, and INDIVIDUAL DEFENDANTS when CALIENTE'S DEFENDANTS wrongfully terminated PLAINTIFF.

159. As a result of the acts and conduct complained of herein, PLAINTIFF suffered a loss of income, loss of employment, loss of benefits, loss of income opportunities, the loss of a salary/pay, special damages, loss of other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, special damages, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary losses.

160. PLAINTIFF has further experienced severe emotional and physical distress.

161. As such, PLAINTIFF has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

**FOR *DISCRIMINATION* UNDER *42 U.S.C.* § 1981 *(As Amended)***
***(Against All DEFENDANTS CALIENTES, Q4, BURGOS AND BRIDGEWATER***
***Collectively and Individually)***

162. PLAINTIFF repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

163. 42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. §1981

164.  PLAINTIFF, who is African American/Black, was discriminated against, denied equal enjoyment of benefits and privileges of employment, and removed from employment because of his race/color as provided under 42 U.S.C. § 1981 and has suffered damages as set forth herein.

165.  PLAINTIFF was subjected to a racially hostile work environment and acts of unlawful

166.  discrimination and retaliation at CALIENTES by her coworkers and CALIENTE'S promoters, in the presence of and/or with the knowledge of DEFENDANTS BURGOS and BRIDGEWATER.

167.  PLAINTIFF was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against African American employees.

168.  PLAINTIFF complained to DEFENDANT BURGOS about the discriminatory abuse she faced at the hands DEFENDANT BURGOS and her coworkers.

169.  DEFENDANTS BURGOS and BRIDGEWATER were aware that PLAINTIFF was being subjected to discriminatory treatment but failed to take a remedial action regarding same.

170.  PLAINTIFF was terminated in the most hostile way due, in part, to her race/color, perceived disabilities and status as a caretaker.

171.  As a result, Plaintiff was unlawfully humiliated, degraded and belittled, suffered a violation of his rights, mental and emotional distress, loss of income/earnings,

inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

172.   CALIENTES DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

173.   Plaintiff is entitled to the maximum amount of damages allowed under this statute.

**AS A THIRD CAUSE OF ACTION**
***DISCRIMINATION* UNDER THE NEW YORK STATE HUMAN RIGHTS LAW**
*(Against CALIENTES and Q4)*

174.   PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

175.   New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . race, color, sex, and disability . . . to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

176.   CALIENTES DEFENDANTS, their agents, representatives, managers, and employees disregarded their obligations to act in the face of discrimination complaints made by employees, and allowed the hostile work environment to continue and escalate against PLAINTIFF.

177.   PLAINTIFF had no reasonable avenue of recourse since DEFENDANTS BURGOS and BRIDGEWATER, the owners of DEFENDANT CALIENTES, permitted their employees to discriminate against PLAINTIFF, and DEFENDANT BURGOS engaged in her own gender/race/disability discrimination attacks against PLAINTIFF before and after terminating PLAINTIFF'S employment.

178.   CALIENTES DEFENDANTS ignored and dismissed PLAINTIFF'S numerous complaints and requests for protection against gender-based discrimination she faced by DEFENDANT BURGOS.

179.   Then, DEFENDANT BURGOS subjected PLAINTIFF to the most humiliating termination based on, or while referring to, PLAINTIFF'S race/color, sex/gender, perceived disabilities and caretaker status.

180.   CALIENTE'S DEFENDANTS lacked any good-faith reason or business justification for terminating PLAINTIFF'S employment.

181.   As a result of CALIENTE'S DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, and emotionally distressed.

182.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, special damages, loss of benefits, inconvenience, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, fear, anger, depression, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

183.   CALIENTE'S DEFENDANTS' conduct was malicious, willful, and conducted with full knowledge of the law.

184.   PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

## AS A FOURTH CAUSE OF ACTION
### *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE HUMAN RIGHTS LAW
**(*Individual Liability against DEFENDANT BURGOS and BRIDGEWATER*)**

185.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

186.   New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet,** incite compel or coerce the doing

of any acts forbidden under this article, or attempt to do so."

187.   INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER violated the section cited herein as set forth and was directly involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

188.   INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER utilized their power, authority, status, and positions to subject PLAINTIFF to the wrongful treatment outlined in this Complaint and to assist their employer, DEFENDANT CALINTES, in unlawful discriminatory practices against PLAINTIFF.

189.   But for INDIVIDUAL DEFENDANTS BURGOS' and BRIDGEWATER'S management positions, INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER would not have been able or authorized to assist DEFENDANTS CALIENTES in continuing the discriminatory treatment of PLAINTIFF.

190.   INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER, acting pursuant to their authority, ignored laws concerning discrimination and discriminatory behavior in the workplace.

191.   At all times, INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER were aware of their obligation to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

192.   INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER, instead, perpetuated the wrongful conduct against PLAINTIFF.

193.   Then, DEFENDANT BURGOS subjected PLAINTIFF to the most humiliating termination based on, or while referring to, PLAINTIFF'S race/color, sex/gender, perceived disabilities and caretaker status.

194.   INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER are individually liable

for aiding and abetting the discriminatory actions of the employer, DEFENDANT CALIENTE.

195.   INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

196.   As a result of INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER discriminatory treatment of PLAINTIFF, PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

197.   INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER action(s) were malicious, willful, outrageous, and conducted with full knowledge of the law.

198.   PLAINTIFF is entitled to the maximum amount of damages allowed

**AS A FIFTH CAUSE OF ACTION**
**_DISCRIMINATION_ UNDER THE NEW YORK CITY HUMAN RIGHTS LAW**
**_(Against CALIENTES and Q4)_**

199.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

200.   The New York City Administrative Code § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

201. CALIENTES DEFENDANTS, their agents, representatives, managers, and employees disregarded their obligations to act in the face of discrimination complaints made by employees, and allowed the hostile work environment to continue and escalate against PLAINTIFF.

202. PLAINTIFF had no reasonable avenue of recourse since DEFENDANTS BURGOS and BRIDGEWATER, the owners of DEFENDANT CALIENTES, permitted their employees to discriminate against PLAINTIFF, and DEFENDANT BURGOS engaged in her own gender/race/disability discrimination attack against PLAINTIFF before terminating PLAINTIFF'S employment.

203. CALIENTES DEFENDANTS ignored and dismissed PLAINTIFF'S numerous complaints and requests for protection against race-based discrimination she faced at DEFENDANT CALIENTES.

204. Then, DEFENDANT BURGOS subjected PLAINTIFF to the most humiliating termination based on, or while referring to, PLAINTIFF'S race/color, sex/gender, perceived disabilities and caretaker status.

205. CALIENTES DEFENDANTS lacked any good-faith reason or business justification for the termination of PLAINTIFF.

206. As a result of CALIENTES DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, and emotionally distressed.

207. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, special damages, loss of benefits, inconvenience, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, fear, anger, depression, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

208.    CALIENTES DEFENDANTS' conduct was malicious, willful, and conducted with full

knowledge of the law.

209.    PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

**AS A SIXTH CAUSE OF ACTION FOR *DISCRIMINATION***
**INDIVIDUAL LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
*(Aider and Abettor Liability against DEFENDANTS BURGOS and BRIDGEWATER)*

210.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said

paragraphs were more fully set forth herein at length.

211.    The New York City Administrative Code § 8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to **aid, abet**, **incite, compel; or coerce** the

doing of any of the acts forbidden under this chapter, or attempt to do so."

212.    INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER engaged in an unlawful

discriminatory practice in violation of New York City Administrative Code § 8-107(6) by

aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and

retaliatory conduct of their employer, CALIENTES.

213.    INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER violated the section

cited herein as set forth and was directly involved in the discriminatory and retaliatory

actions about which PLAINTIFF complains herein.

214.    INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER violated the section

cited herein as set forth and was directly involved in the discriminatory and retaliatory

actions about which PLAINTIFF complains herein.

215.    INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER utilized their power,

authority, status, and positions to subject PLAINTIFF to the wrongful treatment outlined

in this Complaint and to assist thier employer, DEFENDANT CALIENTES, in unlawful

discriminatory practices against PLAINTIFF.

28

216. But for INDIVIDUAL DEFENDANTS BURGOS' and BRIDGEWATER'S management position, INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER would not have been able or authorized to assist DEFENDANTS CALIENTES in continuing the discriminatory treatment of PLAINTIFF.

217. INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER, acting pursuant to their authority, ignored laws concerning discrimination and discriminatory behavior in the workplace.

218. At all times, INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER were aware of their obligation to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

219. INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER, instead, perpetuated the wrongful conduct against PLAINTIFF.

220. Then, DEFENDANT BURGOS subjected PLAINTIFF to the most humiliating termination based on, or while referring to, PLAINTIFF'S race/color, sex/gender, perceived disabilities and caretaker status.

221. INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER are individually liable for aiding and abetting the discriminatory actions of the employer, DEFENDANT CALIENTE.

222. INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

223. As a result of INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER discriminatory treatment of PLAINTIFF, PLAINTIFF was unlawfully humiliated, degraded, and belittled, suffered a violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship,

loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages, and emotional distress. PLAINTIFF has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

224. INDIVIDUAL DEFENDANTS BURGOS and BRIDGEWATER action(s) were malicious, willful, outrageous, and conducted with full knowledge of the law.

225. PLAINTIFF is entitled to the maximum amount of damages allowed

### AS A SEVENTH CAUSE OF ACTION
### *RETALIATION* UNDER THE NEW YORK CITY HUMAN RIGHTS LAW
### *(Against CALIENTES and Q4)*

226. PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

227. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

228. PLAINTIFF was retaliated against by CALIENTE'S DEFENDANTS for engaging in protected activity.

229. PLAINTIFF complained to CALIENTE'S DEFENDANTS about the race-based discrimination and harassment that she faced by CALIENTES DEFENDANTS' EMPLOYEES. PLAINTIFF'S complaints, however, were ignored.

230. Then when PLAINTIFF called out of work to attend to a family emergency, CALIENTES DEFENDANTS took PLAINTIFF off their schedule in retaliation and unlawfully declared PLAINTIFF'S race/color, sex, actual and perceived disability as the reason for PLAINTIFF'S termination.

231. Then, DEFENDANT BURGOS subjected PLAINTIFF to the most humiliating

termination based on, or while referring to, PLAINTIFF'S race/color, sex/gender, perceived disabilities and caretaker status.

232. CALIENTES DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFF following her engagement in protected activity.

233. As a result of CALIENTE'S DEFENDANTS' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

234. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, special damages, loss of benefits, inconvenience, and other compensation which such employment entails, and PLAINTIFF has also suffered future pecuniary losses, emotional pain, suffering, fear, anger, depression, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

235. CALIENTES DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

236. PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

### AS A EIGHTH CAUSE OF ACTION FOR
### FAILURE TO FURNISH PROPER WAGE NOTICE(S)
### IN VIOLATION OF THE NYLL § 195(3)
*(Against CALIENTES and Q4)*

237. PLAINTIFF repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

238. NYLL § 195(3) required DEFENDANT CALIENTE'S to:

> furnish each employee with a statement with every payment of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net

wages.  For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.  For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate.  Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed.

239.   As described above, DEFENDANT CALIENTE'S failed to furnish PLAINTIFF with her wage notices and statements regarding payments owed to PLAINTIFF throughout and up to her termination.

240.   Pursuant to NYLL § 198(1-b), DEFENDANT CALIENTE'S is liable to PLAINTIFF in the amount of $50.00 for each day after the violation occurred, up to the statutory cap.

241.   PLAINTIFF is entitled to the maximum amount of damages, fees, penalties, and costs allowed under this statute.

### JURY DEMAND

242.   PLAINTIFF requests a jury trial on all issues to be tried.

   **WHEREFORE**, PLAINTIFF respectfully requests a judgment against CALIENTES DEFENDANTS:

243.   Declaring that CALIENTES DEFENDANTS engaged in unlawful employment practices prohibited by Title VII, the ADA, the NYSHRL, the NYCHRL, 42 U.S.C. § 1981, and the NYLL §195(3);

244.   Awarding damages to PLAINTIFF for all lost wages and benefits resulting from CALIENTES DEFENDANTS' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

245.   Awarding PLAINTIFF compensatory damages for mental, emotional injury, distress,

pain and suffering and injury to his reputation in an amount to be proven;

246.   Awarding PLAINTIFF punitive damages;

247.   Awarding PLAINTIFF attorneys' fees, costs, and expenses incurred in the prosecution of

the action and as afforded under the above local statutes; and

248.   Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just

and proper to remedy CALIENTES DEFENDANTS' unlawful employment practices.

Dated: New York, New York
       December 12, 2022

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By:

Gregory Calliste, Esq.
Alexandria Jean-Pierre, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248 – 7431
F: (212) 901 – 2107
gcalliste@tpglaws.com
ajean-pierre@tpglaws.com

Exhibit A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622
General FAX (212) 336-3625

**BY PORTAL**

Gregory Calliste, Esq.
Phillips & Associates
45 Broadway, Suite 430
New York, New York 10006
GCalliste@tpglaws.com

RE:          **Alicia Bloise  v. Caliente's Restaurant**
EEOC Charge No.:          **520-2022-07894**

Dear Mr. Calliste:

This office is in receipt of your request for a *Notice of Right to Sue* on the above
referenced charge.

The Commission has reviewed all of the circumstances of this case to ascertain whether
we will be able to complete our administrative process within 180 days.  We have
concluded that we will not be able to complete our administrative process within the
allotted 180 days since your charge was filed, and we are issuing your client the
requested *Notice of Right to Sue.*

Sincerely,

On Behalf of the Commission:

VANESSA    Digitally signed by
                       VANESSA GUEST
GUEST        Date: 2022.11.22          FOR                     ___11-22-2022_____
                       22:32:13 -05'00'
Timothy Riera, Acting District Director- *NYDO*                     Date