**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alicia Bloise, | |
| Plaintiff, | |
| -against- | |
| Q4 Generational Wealth, Inc., et al., | |
| Defendants. | |

**1:22-cv-10488 (JHR) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JENNIFER H. REARDEN, UNITED STATES DISTRICT JUDGE:**

Presently before the Court is a motion by Plaintiff Alicia Bloise ("Plaintiff" or "Bloise"), pursuant to Rule 55 of the Federal Rules of Civil Procedure, for entry of a default judgment against Defendant Q4 Generational Wealth, Inc. ("Q4") in the amount of $260,665.71. (*See* Pl.'s 9/3/25 Not. of Mot., ECF No. 89;[1] Calliste 9/3/25 Aff. ¶ 365.)

For the reasons set forth below, it is respectfully recommended that Plaintiff's motion for a default judgment be GRANTED IN PART and DENIED IN PART and that Plaintiff be awarded a total of $93,925.71.

---

[1] Although Plaintiff's Notice of Motion states that a default judgment is being sought "against Defendants Caliente's Restaurant and Bar and Q4 Generational Wealth, Inc." (*see* Pl.'s 9/3/25 Not. of Mot.), the Certificate of Default was issued against "Defendant Q4 GENERATIONAL WEALTH, INC. d/b/a CALIENTES RESTAURANT & BAR." (5/9/25 Cert. of Default, ECF No. 87, at 1.) Thus, the default judgment shall issue as to Q4, which is an active New York corporation. (Calliste 9/3/25 Aff., ECF No. 90, ¶ 4.)

**BACKGROUND**

I.     **Established Facts as a Result of Defendant's Default**[2]

Q4 owned, operated and controlled Calientes Restaurant and Bar ("Calientes"). (Am. Compl., ECF No. 38, ¶ 9.) Melanie Burgos ("Burgos") and Jahee Bridgewater ("Bridgewater") were co-owners and managers at Calientes. (*Id*. ¶¶ 13-14.)

Bloise worked as a bartender at Calientes from November 27, 2021 to May 19, 2022 and was supervised by Burgos and Bridgewater. (Am. Compl. ¶¶ 13-15, 17.) Calientes paid Bloise in cash. (Am. Compl. ¶ 18.) Calientes never provided proof of payment, proof of hours worked, wage/tip records, tax documents or pay stubs. (*Id*. ¶¶ 19, 21.)

Bloise was the only Black employee among a largely Latino workforce at Calientes. (Am. Compl. ¶¶ 25, 41.) From the beginning of her employment, Bloise's co-workers made discriminatory statements about her race/color, sex/gender and disability. (*Id*. ¶ 26.) At the time of her employment at Calientes, Bloise was suffering from anxiety and depression, and this was known to Burgos. (*Id*. ¶ 26, 76.)

Bloise "was subjected to a plethora of degrading epithets and insults made directly by [Burgos], and her employees, related to [Plaintiff's] race/color (African American/black)" and occurred "on an almost daily basis." (Am. Compl. ¶¶ 26-27.) Bloise's co-workers "use[d] racial slurs in the Spanish Language that meant 'black girl' or 'the ghetto black girl' when referring to [Bloise]." (*Id*. ¶ 28.) The racial slurs often occurred in front of Burgos and Burgos herself called

---

[2] Considering Q4's default, the Court is required to accept all of Plaintiff's allegations as true, except for those pertaining to damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009).

Bloise "the ghetto black girl." (*Id*. ¶¶ 31-32 (emphasis omitted).) In addition, Burgos and Bloise's co-workers regularly used the n-word around her. (*Id*. ¶¶ 37-40.)

Bridgewater informed Bloise that the "promoters" asked him to take Plaintiff off of the schedule during their promotional and party event nights because Plaintiff is black, and acknowledged that the promoters were racist. (Am. Compl. ¶¶ 44-45.) The promoters would not allow Bloise to make their drinks and refused anything Bloise offered them. (*Id*. ¶ 43.) Neither Burgos nor Bridgewater spoke to the promoters about their discriminatory requests and took no remedial action to address the promoters' discriminatory behavior toward Bloise. (*Id*. ¶ 47.) Both Burgos and Bridgewater "knew that [Bloise] was being subjected to a hostile work environment, but took no action to abate, control or prevent same." (*Id*. ¶ 93.)

On May 14, 2022, about three hours before Bloise was scheduled to start her shift, she sent a text message to Burgos indicating that Bloise was "calling out of work due to a family emergency." (Am. Compl. ¶ 52.) Burgos did not respond to Bloise's message, but on May 17, 2022, removed Bloise from the Calientes work schedule. (*Id*. ¶¶ 55-56.) On May 19, 2022, at approximately 2:06 p.m., Burgos sent Bloise a text message that read:

> Don't be a salty bitch . . . I never new [sic] you was so jealous. Carry on being a fake designer wearing whore. Just take your L the way you take multiple dicks. You suck as a bartender that's why you don't make any money here. Clarisa just got here and she snatched all your customers. You can fuck with Clari or Rose. You're the third little piggy . . . I have multiple customers that said you give it up the pussy for crab legs it's not just your ex best friend saying that. So keep talking shit about me. All you doing is making me more popular. Now go get vaccinated and get a job bum ass bitch.

(*Id*. ¶¶ 57-59.) Bloise contends in her Amended Complaint that she was unlawfully terminated on May 19, 2022, *i.e.*, the day that the foregoing text message was sent, "in part" because of her race/color.  (*See* Am. Compl. ¶¶ 17, 141, 145, 155.)

3

Bloise responded to Burgos' May 19, 2022 text message, stating: ""As an employee [I'm going to sue] . . . you for this message this is harassment thank you."  (Am. Compl. ¶ 65.) Burgos then responded stating the following in a text message:

> "Your [sic] welcome…this is proof you a rat."
> "Ratianna."
> "Leo told us about you…you're the mad one. Your [sic] the one that gotta [sic] struggle
> to find employment dweeb"
> "You can't afford lawyer money your [sic] a brokee."
> "Fake smile like your weave"
> "Your a [sic] maniac depression is getting the best of you take care."
> "Come fuck me up now…"
> "Sike*."

(*Id*. ¶ 66.) Thereafter, beginning on May 25, 2022, and over the course of several days, Burgos sent harassing texts, including racial slurs and discriminatory epithets. (*See* Am. Compl. ¶¶ 80-82.)

As a result of Q4's discriminatory treatment, Bloise asserts that she suffered severe emotional distress. (*See*, *e.g.*, Am. Compl. ¶ 112.)

## II.    **Procedural History**

On December 12, 2022, the Complaint in this action was filed alleging federal and state law discrimination claims against Q4, and its co-owners, Burgos and Bridgewater (the "Individual Defendants"), as well as a New York Labor Law claim against Q4.  (Compl., ECF No. 1, ¶¶ 135-241.) On June 13, 2023, the Individual Defendants filed a motion to dismiss the Complaint, pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure, for insufficient service of process and for failure to state a claim. (Defs.' 6/13/23 Mot., ECF No. 25.) On July 25, 2023, this Court entered a Report and Recommendation recommending that the Individual Defendants' motion to dismiss for insufficient service of process be denied; that the Complaint

4

be *sua sponte* dismissed for failure to comply with Rule 8 of the Federal Rules of Civil Procedure; and that Plaintiff be given leave to file an amended complaint that conforms to the requirements of Rule 8. (7/25/23 R&R, ECF No. 34.)[3]

On July 31, 2023, prior to the date when objections to the July 25, 2023 Report and Recommendation were due, Plaintiff filed an Amended Complaint. (*See* Am. Compl.) The Amended Complaint asserts the following claims: (1) a claim against Q4 under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (First Cause of Action) (*Id*. ¶¶ 102-16); (2) claims against Q4 under the Americans with Disabilities Act ("ADA") (Second and Third Causes of Action) (*id*. ¶¶ 117-38); (3) claims under 42 U.S.C. § 1981 ("Section 1981") against Q4 and the Individual Defendants (Fourth through Sixth Causes of Action) (*id*. ¶¶ 139-67); (4) claims under the New York State Human Rights Law ("NYSHRL") against Q4 and the Individual Defendants (Seventh through Ninth Causes of Action) (*id*. ¶¶ 168-203); (5) claims under the New York City Human Rights Law ("NYCHRL") against Q4 and the Individual Defendants (Tenth through Fifteenth Causes of Action) (*id*. ¶¶ 204-71); and (6) a claim against Q4 under the New York Labor Law ("NYLL") (Sixteenth Cause of Action). (*Id*. ¶¶ 272-77.)

On August 23, 2023, the Amended Complaint was served on Q4. (*See* 8/31/23 Aff. of Service, ECF No. 40.) To date, Q4 never has appeared by counsel in this action.

On September 27, 2023, the Individual Defendants filed a motion to dismiss the Amended Complaint. (Defs.' 9/27/23 Mot., ECF No. 43.) On November 22, 2023, this Court issued a Report

---

[3] The R&R explained that the 248-paragraph Complaint was unclear as to precisely what causes of action were being pled against the Individual Defendants, and that the Complaint did not comply with Rule 8 of the Federal Rules of Civil Procedure, given its prolix nature. (7/25/23 R&R at 4-8.) The Court noted that Rule 8 required "a short and plain statement of the claim showing that the pleader is entitled to relief." (*Id*. at 5 (quoting Fed. R. Civ. P. 8(a)(2)).)

and Recommendation with respect to the Individual Defendants' motion to dismiss. (11/22/23 R&R, ECF No. 51.) Specifically, the Court recommended that Plaintiff's Section 1981 claim against Bridgewater based upon a hostile work environment be dismissed; that Plaintiff's Section 1981 claim against both Individual Defendants based upon termination and retaliation be dismissed; that Plaintiff's NYSHRL and NYCHRL claims against Bridgewater be dismissed; and that Plaintiff's NYCHRL claim against Burgos based upon retaliation be dismissed, thereby leaving against Burgos the Fifth Cause of Action under Section 1981 (based upon hostile work environment only), the Eighth Cause of Action under the NYSHRL; and Eleventh and Twelfth Causes of Action under the NYCHRL. (*Id*. at 22.) The Court also recommended that Plaintiff be granted leave to amend. (*Id*.)

No objections to the November 22, 2023 R&R were filed and, on May 31, 2024, District Judge Rearden adopted the R&R in its entirety. (5/31/24 Order Adopting, ECF No. 53, at 1.) This Order had the effect of dismissing all claims against Bridgewater. (*See id*. at 4.) By Order, dated May 31, 2024, Plaintiff was directed to file any further amended pleading by June 14, 2024 (5/31/24 Order, ECF No. 54), but never did so.

On March 28, 2025, Plaintiff filed a motion to voluntarily dismiss her claims against Burgos. (Pl.'s 3/28/25 Not. of Mot., ECF No. 79.) On May 5, 2025, this Court recommended that such motion be granted (5/5/25 R&R, ECF No. 82), and the motion is *sub judice*.

On May 9, 2025, a Certificate of Default was entered against Q4. (*See* 5/9/25 Cert. of Default.) On September 3, 2025, Plaintiff filed the instant motion for a default judgment.[4] (See Pl.'s 9/3/25 Not. of Mot.) On December 2, 2025, the Court entered an Order providing that, if

---

[4] Burgos filed a letter entitled "Statement to the Court" in response. (Burgos 10/27/25 Ltr., ECF No. 93.) However, since Burgos is not an attorney and a corporation like Q4 cannot appear *pro se*, *see Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007), Burgos' letter is a nullity.

Plaintiff wished to place her mental health in controversy, and recover greater than "garden variety" emotional distress damages, Plaintiff was to file to the ECF docket no later than December 16, 2025, records from Plaintiff's doctor, social worker and therapist pertaining to her mental health during and after Plaintiff's employment at Q4. (12/2/25 Order, ECF No. 94, at 2.) To date, Plaintiff has not filed any such records.

### DISCUSSION

I.    **Liability**

"To enter a default judgment, a district court must determine whether—after taking all well-pleaded allegations as true and making reasonable inferences in the plaintiff's favor—the plaintiff's 'allegations establish . . . liability as a matter of law.'" *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024) (quoting *Finkel*, 577 F.3d at 84). The Court first considers Q4's liability under Title VII, Section 1981, the NYSHRL and the NYCHRL and then considers Q4's liability under the ADA and the NYLL.

A.    **Title VII, Section 1981, NYSHRL And NYCHRL**

There are three aspects of Plaintiff's claims under Title VII, Section 1981, the NYSHRL and the NYCHRL, *i.e.*, a hostile work environment claim, a termination claim and a retaliation claim.

1.    **Hostile Work Environment**

This Court already has found that the allegations of the Amended Complaint state a claim for a hostile work environment against Burgos, one of the co-owners of Q4, under Section 1981 and the NYSHRL. *See Bloise v. Q4 Generational Wealth, Inc*., No. 22-CV-10488 (JHR) (SDA), 2023 WL 11836897, at *4, *9 (S.D.N.Y. Nov. 22, 2023), *report and recommendation adopted*, 2024 WL 2798862 (S.D.N.Y. May 31, 2024). The elements of a claim under the Section 1981 are the same

as the elements of a Title VII claim.[5] *See Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015). Moreover, the standards for liability under the NYCHRL are co-extensive or even more liberal than those for liability under the NYSHRL. *See Bloise*, 2023 WL 11836897, at *9. Because Burgos was Plaintiff's supervisor (*see* Am. Compl. ¶ 13), Q4 also is liable on the hostile work environment claim. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019) (holding that there is "strict vicarious liability if an employer's supervisor has created the hostile environment" (citing *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015)).

### 2.    Termination

This Court already has found that the Amended Complaint did not state a plausible claim for termination against Burgos under Section 1981. *See Bloise*, 2023 WL 11836897, at *5. The Court stated:

> The Court finds that [the Amended Complaint] allegations are insufficient to plausibly allege that Plaintiff was terminated because of her race. Plaintiff appears to assert that the May 19, 2022 text message, which included the statement "[n]ow go get vaccinated and get a job bum ass bitch[]" constituted her termination. Assuming Plaintiff was terminated on May 19, 2022 as she alleges, she still has not plausibly alleged that she was terminated because of her race. Although an inference of discrimination can arise from discriminatory comments directed at a plaintiff's racial group, *see Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-00695 (KMK), 2023 WL 2691622, at *19 (S.D.N.Y. Mar. 29, 2023) (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)), "a plaintiff must still plausibly allege that her protected characteristic was causally linked to the adverse employment action." *Gurley v. David H. Berg & Assocs.*, No. 20-CV-09998 (ER), 2022 WL 309442, at *3 (S.D.N.Y. Feb. 2, 2022) (citing Alfano v. Costello,

---

[5] "It is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). The Amended Complaint does not plead that Plaintiff exhausted her administrative remedies. However, the failure to exhaust administrative remedies is an affirmative defense, for which a defendant bears the burden of proof. *See McKenzie v. Big Apple Training Inc.*, No. 22-CV-09554 (GHW), 2023 WL 4866041, at *6 (S.D.N.Y. July 31, 2023). Because Q4 defaulted, it has not asserted any defenses. Regardless, because Plaintiff has established liability for a hostile work environment under other statutes, and thus is entitled to damages based upon a hostile work environment, it is immaterial whether or not Q4 is liable under Title VII.

294 F.3d 365, 377 (2d Cir. 2002)). The text message, while distasteful, makes no reference to Plaintiff's race. (Am. Compl. ¶ 59.) And, although Plaintiff alleges that Defendant Burgos made prior discriminatory comments regarding her race, she has not alleged any connection between those comments and her alleged termination. *See Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) (holding that, for remarks to raise an inference of discriminatory intent, there must be "a nexus between the remarks and an adverse employment decision").

*Id*. For the same reasons, Plaintiff does not state a claim for termination against Q4 under Section 1981 (or Title VII). Burgos, acting on behalf of Q4, is the one who allegedly terminated Plaintiff. Thus, if there is no termination claim against Burgos, there is no termination claim against Q4.

In addition, Plaintiff does not state a termination claim under the more lenient standards of the NYCHRL (or, to the extent the standards of the NYSHRL are co-extensive with the standards of the NYCHRL, the NYSHRL), because the facts pled in the Amended Complaint do not establish that Plaintiff's race was one of the motivating factors in Plaintiff's termination, as required.[6] *See Melman v. Montefiore Med. Ctr*., 98 A.D.3d 107, 127-28 (1st Dep't 2012) (finding no NYCHRL liability where "combined evidence on which plaintiff relie[d] [did] not amount even to circumstantial evidence that age discrimination played any role in [employer's] adverse decisions concerning his employment").

### 3.    **Retaliation**

This Court already has found that the Amended Complaint did not state a plausible claim for retaliation against Burgos under Section 1981. *See Bloise*, 2023 WL 11836897, at *6. The Court stated:

> Plaintiff alleges that she texted Defendant Burgos on May 19, 2022 that she was "going to [sue] [Burgos] for [the 2:06 p.m. text message] this is harassment thank

---

[6] The Court also notes that there is evidence in the record suggesting that Plaintiff was not fired, but that she quit her job at Calientes. (*See* Defs.' 10/7/23 Reply, ECF No. 46, at 2.)

you" and, in retaliation, Burgos called her a "rat" and responded with other epithets. (Am. Compl. ¶¶ 65-69.) Although "[e]mployer actions after termination may, in some instances, constitute retaliatory action[,]" *Shetty v. SG Blocks, Inc.*, No. 20-CV-00550 (ARR) (SMG), 2020 WL 3183779, at *9 (E.D.N.Y. June 15, 2020), the Court finds that Plaintiff's allegations regarding Defendant Burgos' alleged comments are insufficient to allege an adverse employment action even under the broad range of conduct applicable to retaliation claims. *Cf. Brand v. New Rochelle City Sch. Dist.*, No. 19-CV-7263, 2022 WL 671077, at *14 (S.D.N.Y. Mar. 7, 2022) (speaking poorly about plaintiff does not constitute adverse employment action in retaliation context) (citing cases) (granting motion for summary judgment on Title VII retaliation claim).

*Id*. For the same reasons, Plaintiff does not state a claim for retaliation against Q4 under Section 1981 (or Title VII). Again, Burgos, acting on behalf of Q4, is the one who allegedly retaliated against Plaintiff. Thus, if there is no termination claim against Burgos, there is no retaliation claim against Q4.

The Court finds, however, that Plaintiff does state a retaliation claim under the more lenient standards of the NYCHRL. The NYCHRL is "slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an adverse employment action, it only requires him to show that something happened that was reasonably likely to deter a person from engaging in protected activity." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012) (cleaned up) (citation omitted). After Bloise complained of harassment (*see* Am. Compl. ¶ 65), Burgos responded with racial epithets, which reasonably likely could deter someone from making similar complaints. (*See id*. ¶ 66.)

B.      **ADA**[7]

Under the ADA (and the NYSHRL), to establish a prima facie case of disability discrimination, "a plaintiff must show (a) that [her] employer is subject to the [statute]; (b) that [s]he is disabled within the meaning of the [statute] or perceived to be so by [her] employer;[8] (c) that [s]he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that [s]he suffered an adverse employment action because of [her] disability." *Brady v. Wal-Mart Stores*, Inc., 531 F.3d 127, 134 (2d Cir. 2008).[9] Plaintiff must establish that disability-based discrimination was the "but-for" cause of her termination. *See DeSio v. Singh*, No. 19-CV-03954 (JCM), 2021 WL 4449314, at *20 (S.D.N.Y. Sept. 28, 2021) (citing *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

In the present case, Plaintiff alleges that she suffered from a disability of anxiety and depression (Am. Compl. ¶ 26) and that Q4 perceived that she suffered from a disability of manic

---

[7] To the extent Plaintiff alleges disability discrimination-related claims under the NYSHRL, such claims are "governed by the same legal standards as govern federal ADA claims." *Rutledge v. Haru Inc.*, No. 20-CV-07641 (AJN), 2021 WL 4429328, at *2 (S.D.N.Y. Sept. 27, 2021) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)). To the extent Plaintiff alleges disability discrimination-related claims under the NYCHRL, as addressed in the footnotes below, such claims are governed by more liberal standards regarding the definition of "disability" and the causality required.

[8] The NYCHRL defines "disability" broadly to mean "any physical, medical, mental or psychological impairment, or a history or record of such impairment." N.Y.C. Admin Code § 8-102. Courts have recognized that the NYCHRL's definition of disability is "on its face, broader than that provided by NYSHRL" and extends to conditions that might not qualify as disabilities under federal law. *See Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 253 (E.D.N.Y. 2015).

[9] Similarly, to establish a prima facie case of disability discrimination under NYCHRL, a plaintiff must show "that (1) her employer is subject to the . . . NYCHRL; (2) she was disabled within the meaning of the NYSHRL and NYCHRL; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability." *Gioia v. Forbes Media LLC*, No. 09-CV-06114 (RJS), 2011 WL 4549607, at *9 (S.D.N.Y. Sept. 30, 2011). "[T]o plead a claim of disability discrimination under the NYCHRL, a plaintiff must allege that [s]he was treated 'less well' because of [her] disability." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

depression. (*See id.* ¶¶ 77, 79.) However, there are no allegations in the Amended Complaint to suggest that any adverse employment action was taken against Plaintiff due to any disability or perceived disability.[10] Thus, she has not stated a disability discrimination-related claim.

Plaintiff's assertion of an associational disability discrimination claim (*see* Am. Compl. ¶¶ 128-38) fares no better. "[T]o sustain an 'associational discrimination' claim under the ADA, a plaintiff must first make out a prima facie case by establishing: 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016).[11]

In the present case, Plaintiff has not stated an associational disability discrimination claim. First, Plaintiff has not alleged the type or nature of any disability suffered by a relative. Plaintiff alleges that "DEFENDANT BURGOS knew that PLAINTIFF had elderly parents with ongoing health issues and disabilities, and that PLAINTIFF was the caretaker of her parents" and that "PLAINTIFF was known by her employer(s) CALIENTE'S BAR and/or Q4 to have relatives with disabilities, or to associate with individuals that suffered from a disabilities, and it was well known to DEFENDANTS that PLAINTIFF served as the caretaker thereof." (Am. Compl. ¶¶ 53, 132.) Since

---

[10] Nor are there allegations to suggest that Plaintiff was treated "less well" because of her disability or perceived disability, as required under the NYCHRL.

[11] "The NYSHRL does not provide for a claim of disability association discrimination." *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-08837 (GHW), 2022 WL 912940, at *8 (S.D.N.Y. Mar. 28, 2022) (internal quotation marks, citation and footnote omitted). There is a claim of disability association discrimination under the NYCHRL and the standards mirror the federal standard under the ADA. *See id.* at *9.

Plaintiff does not allege the nature or type of disability from which his relatives suffered, the Court cannot ascertain if Plaintiff's relatives suffered from any qualifying disabilities. *Cf. Lee v. Sony BMG Music Ent., Inc.*, 557 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2008) (ADA claim dismissed where Plaintiff "d[id] not even identity what her disability is" and "because plaintiff [did] not specify what her disability is, her disability discrimination claims under state and local law [also were] dismissed").

Second, Plaintiff has not alleged that she was terminated because of a relative's disability. Plaintiff alleges in paragraph 52 of the Amended Complaint that, on May 14, 2022, about three hours before she was scheduled to start her shift, she sent a text message to Burgos "indicating that [Plaintiff] was calling out of work due to a family emergency." (Am. Compl. ¶ 52.) She alleges in the following paragraphs that Burgos "knew that [Plaintiff] had elderly parents with ongoing health issues and disabilities, and that [Plaintiff] was the caretaker of her parents" and that "[Plaintiff] called out on this day due to her ongoing caretaker issues and responsibilities." (*Id*. ¶¶ 53-54.) Notably, Plaintiff does not allege that she made any reference to her parents in the text she sent on May 14, 2022. Plaintiff alleges that she was terminated five days later, *i.e.*, on May 19, 2022 (*see id*. ¶ 17), which was the day that Burgos sent her inflammatory text message to Plaintiff. (*See id*. ¶ 59.) Nowhere in that text message does Burgos reference Plaintiff's parents.

The foregoing facts do not support a reasonable inference that any disability of Plaintiff's parents was a determining factor in any decision by Q4 to terminate Plaintiff. As such, no associational disability discrimination claim has been stated.

### C.    NYLL

Plaintiff asserts a claim under Section 195(3) of the NYLL. (Am. Compl. ¶¶ 272-77.) Under that provision, an employer must, with each payment of wages, provide an employee with a wage

notice containing, *inter alia*, the rate of pay, gross wages, deductions, allowances claimed as part of the minimum wage, and net wages. N.Y. Lab. Law § 195(3). Here, Plaintiff adequately has alleged that Q4 failed to comply with the foregoing provision. (*See* Am. Compl. ¶¶ 19, 21.)

## II.      Damages

"Although 'a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *JC Hosp. v. Hochberg*, No. 23-CV-02051 (LJL), 2025 WL 3124313, at *5 (S.D.N.Y. Nov. 7, 2025) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). Plaintiff bears the burden of establishing his entitlement to recovery and thus must substantiate her claims with evidence to prove the extent of her damages. *See id.*

"Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Greyhound Exhibitgroup*, 973 F.2d at 158. However, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *JC Hosp.,* 2025 WL 3124313, at *5 ("Federal Rule of Civil Procedure 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court."). Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok*, 873 F.2d at 40); *see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro*

14

*Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence"). Here, the Court relies on Plaintiff's affirmation (together with its exhibits) and declarations, which together contain the required evidentiary basis upon which to determine damages.

Plaintiff seeks both emotional distress damages, punitive damages, backpay, and an award for Q4's violation of the NYLL, as well as attorneys' fees and costs, which are considered in turn below.

### A.    Emotional Distress Damages

#### 1.    Legal Standards

Under Title VII, Section 1981, the NYSHRL and the NYCHRL, damages for emotional distress are available. *See Cowan v. Prudential Ins. Co. of Am.*, 852 F.2d 688, 691 (2d Cir. 1988); *United States v. Vulcan Soc., Inc.*, 897 F. Supp. 2d 30, 42 (E.D.N.Y. 2012). "Awards for mental and emotional distress are inherently speculative." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 205 (2d Cir. 2014). "There is no objective way to assign any particular dollar value to distress." *Id*. Nonetheless, "a legal system has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." *Id.* (internal quotation marks omitted).

"In considering emotional distress damages, 'courts should consider the duration, severity, consequences, and physical manifestations of mental anguish.'" *Castillo v. Isakov*, No. 22-CV-06888 (LJL) (GS), 2024 WL 5323851, at *11 (S.D.N.Y. Dec. 27, 2024) (quoting *Aponte v. Clinton St. Pizza Inc.*, No. 22-CV-03188 (DEH), 2024 WL 3796806, at *9 (S.D.N.Y. July 19, 2024), *report and recommendation adopted,* 2025 WL 89048 (S.D.N.Y. Jan. 14, 2025)).

Courts in this Circuit group emotional distress damages into three categories: "garden variety," "significant," and "egregious." *McDaniel v. Scotch & Soda Retail LLC*, No. 23-CV-07859 (DLC), 2025 WL 401108, at *2 (S.D.N.Y. Feb. 4, 2025) (citing *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 126 (2d Cir. 2024)).

> In garden-variety claims, the evidence of emotional harm is limited to plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. . . . Significant emotional distress claims are based on more substantial harm or offensive conduct and may be supported by medical testimony, evidence of treatment by a healthcare professional, and testimony from other witnesses. Egregious emotional distress claims yield the highest awards and are warranted only where the employer's conduct was outrageous and shocking or affected the physical health of the plaintiff.

*Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 546 (2d Cir. 2020) (quoting *Maher v. All. Mortg. Banking Corp.*, No. 06-CV-05073 (DRH) (ARL), 2010 WL 3516153, at *2 (E.D.N.Y. Aug. 9, 2010)).[12] Recent decisions have found that garden variety emotional distress claims generally merit $30,000 to $125,000 awards. *See Qorrolli*, 124 F.4th at 126.[13]

### 2.    Analysis

The Court finds that Plaintiff is entitled to recover emotional distress damages based upon her hostile work environment claim, as well as her retaliation claim under the NYCHRL. With respect to the quantum of emotional distress damages, Plaintiff seeks $100,000.00. (*See* Calliste

---

[12] "This approach has been used in damages inquests on default judgments as well as review of jury verdicts." *Holness v. Nat'l Mobile Television, Inc.*, No. 09-CV-02601 (KAM) (RML), 2012 WL 1744847, at *4 (E.D.N.Y. Feb. 14, 2012), *report and recommendation adopted as modified*, 2012 WL 1744744 (E.D.N.Y. May 15, 2012).

[13] *See also Bethel v. Royal Leaf NY LLC*, No. 24-CV-09073 (DLC) (KHP), 2025 WL 3216640, at *8 (S.D.N.Y. Oct. 9, 2025), *report and recommendation adopted*, 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025); *Ravina v. Columbia Univ.*, No. 16-CV-02137 (RA), 2019 WL 1450449, at *11 (S.D.N.Y. Mar. 31, 2019); *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 320 (S.D.N.Y. 2018).

9/3/25 Aff. ¶¶ 295, 309.) The Court finds that an award of $100,000.00 in emotional distress damages is excessive.

Plaintiff asserts that, as a result of Q4's discriminatory treatment, she suffered severe emotional distress. (A. Bloise Decl., ECF No. 90-6, ¶ 90; *see also*, *e.g.*, J. Bloise Decl., ECF No. 90-7, ¶ 4.) Plaintiff makes reference to a diagnosis by her doctor of "severe anxiety and depression," as well as treatment by a social worker and/or therapist. (*See* Calliste 9/3/25 Aff. ¶¶ 261-63; *see also* A. Bloise Decl. ¶¶ 105-06.) However, despite the Court's invitation in its Order, dated December 2, 2025, for her to submit records from her doctor, social worker and therapist relating to her mental health (*see* 12/2/25 Order at 2), she failed to submit such records. Thus, as forewarned in the December 2, 2025 Order, since plaintiff failed to submit medical evidence in support of her emotional distress claim, such claim shall be treated as "garden variety." *See United States v. Asare*, 476 F. Supp. 3d 20, 37 (S.D.N.Y. 2020) (garden variety emotional distress claims "typically lack extraordinary circumstances and are not supported by any medical corroboration" (citation omitted)).

Having considered the amount, duration and consequences of Plaintiff's emotional distress, the Court finds that an award of $30,000.00 is appropriate. This award is consistent with amounts awarded in "garden variety" cases involving racial discrimination. *See, e.g., Quintero v. Angels of the World, Inc.,* No. 19-CV-06126 (DG), 2021 WL 4464123, at *6 (E.D.N.Y. Sept. 10, 2021), *report and recommendation adopted*, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021) (awarding $30,000 to plaintiff who alleged "intense stress and anxiety," as well as "significant physical manifestations" as result of racial discrimination including being "regularly called 'Monkeys' and 'Zoo Animals' from the 'Bronx Zoo.'") (collecting cases).

Accordingly, the Court recommends that Plaintiff be awarded the sum of $30,000.00 in compensatory emotional distress damages.

### B.        Punitive Damages

#### 1.        Legal Standards

"Although the NYSHRL does not provide for punitive damages, . . . such damages are available under Title VII, Section 1981 and the NYCHRL[.]" *Quintero*, No. 2021 WL 4464123, at *16. "An award of punitive damages is 'a discretionary moral judgment' that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Tolbert v. Queens Coll*., 242 F.3d 58, 77 (2d Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)). "Punitive damages may be awarded for a civil rights claim if 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id*. (quoting *Smith*, 461 U.S. at 56) (emphasis omitted). "These terms 'pertain to the [defendant's] knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'" *Id*. (quoting *Kolstad v. American Dental Association*, 527 U.S. 526, 535 (1999)).

In assessing the reasonableness of punitive damages, there are several factors that courts must consider: "(1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in

18

comparable cases." *DeCurtis v. Upward Bound Int'l Inc.*, No. 09-CV-05378 (RJS), 2011 WL 4549412, at *5 (S.D.N.Y. Sept. 27, 2011) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)). [14]

The Supreme Court has stated that "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. Courts determine the reprehensibility of a defendant's conduct by considering whether, *inter alia*,

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (citation omitted).

"Awards of punitive damages are by nature speculative, arbitrary approximations." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir. 2013). "No objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." *Id*.

### 2.    Analysis

The Court finds that Q4's conduct towards Plaintiff was egregious enough or sufficiently outrageous to warrant punitive damages. Plaintiff alleges repeated instances on almost a daily basis of Q4 employees, including Burgos, using racial slurs directed towards her. (*See* Am. Compl. ¶¶ 26-28, 31-32, 37-40.) Under these circumstances, an award of punitive damages is appropriate against Q4 for the acts of its employees. *See Munson v. Diamond*, No. 15-CV-00425 (DAB) (BCM),

---

[14] In addition, the court typically is required to consider the defendant's financial circumstances in determining an award of punitive damages. *Antoine v. Brooklyn Maids 26, Inc.,* 489 F. Supp. 3d 68, 101 (E.D.N.Y. 2020). However, "by defaulting, defendant has surrendered the opportunity to demonstrate that [its] financial circumstances should constrain the amount of any such award." *Id*. at 102 (quoting *Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997)).

2017 WL 4863096, at *9 (S.D.N.Y. June 1, 2017), *report and recommendation adopted*, 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017) (holding employer liable for conduct of managerial agent, and noting that defaulting employer "cannot show that it made 'good-faith efforts to prevent discrimination in the workplace'").

With respect to the quantum of punitive damages, Plaintiff seeks $75,000.00 (*see* Calliste 9/3/25 Aff. ¶¶ 302, 309), which the Court finds excessive. Courts in this Circuit routinely award punitive damages in an amount equal to or less than an award of compensatory damages. *See, e.g., Pizarro v. Quezada*, No. CV-24-02422, 2025 WL 2865251, at *4 (2d Cir. Oct. 9, 2025) ("[C]ourts in this circuit have often awarded punitive damages in an amount equal to, or less than, an award of compensatory damages, where the conduct concerned a sexual assault."); *Duarte*, 341 F. Supp. 3d at 333 (finding punitive damages award equal to compensatory damages award appropriate).

Having considered all the relevant factors, the Court recommends that Plaintiff be awarded $30,000.00 in punitive damages. The Court finds that this amount is appropriate in view of the facts of this case and the ratio to compensatory damages. Although "the comparison of punitive awards is of limited utility because each award is fact-specific[,]" *Garcia v. Comprehensive Ctr., LLC*, No. 17-CV-8970 (JPO) (BCM), 2019 WL 8274296, at *9 (S.D.N.Y. Nov. 21, 2019), *report and recommendation adopted*, 2020 WL 1435002 (S.D.N.Y. Mar. 24, 2020) (cleaned up),[15] the Court finds that this award is comparable to other cases. *See*, *e.g.*, *Lamberson v. Six W. Retail Acquisition, Inc.*, No. 98-CV-08053, 2002 WL 59424, at *1 (S.D.N.Y. Jan. 16, 2022) (ordering

---

[15] *See also Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 76 (E.D.N.Y. 2002) ("comparing punitive damage awards in other cases where employers were found liable for discrimination . . . is of limited utility because a wide range of awards have been upheld." (collecting cases upholding awards ranging from $10,000 to $1.25 million), *aff'd*, 93 F. App'x 260 (2d Cir. 2004).

new trial on punitive damages unless plaintiff accepted $15,000 from each defendant (employer and individual supervisor), for total of $30,000 in punitive damages).

### C.      Backpay

Plaintiff seeks backpay based upon Plaintiff's alleged unlawful termination. (*See* Calliste 9/3/25 Aff. ¶ 310.) However, because, as set forth above, Q4 is found not liable on Plaintiff's termination claim, Plaintiff is not entitled to an award of back pay.

### D.      NYLL Damages

Plaintiff seeks an award of $5,000.00 for Q4's violation of Section 195(3) of the NYLL. (*See* Calliste 9/3/25 Aff. ¶ 317.) Since the Court has found Q4 liable under this statute, Plaintiff is entitled to an award of such amount.

An employer's failure to comply with Section 195(3) of the NYLL makes the employer liable for damages for each instance that the violations occurred or continued to occur. *See* § 198(1-d) (stating that damages for wage statement violations under § 195(3) accumulate at rate of $250 per day but may not exceed $5,000). Accordingly, Plaintiff is entitled to recover $5,000.00 for the violation of NYLL § 195(3).

### E.      Attorneys' Fees and Costs

"Under Title VII and NYCHRL, a plaintiff may seek, and the court may award, reasonable attorneys' fees and costs." *Williams v. Firequench, Inc.*, No. 21-CV-4112 (PAE) (JLC), 2022 WL 3571752, at *9 (S.D.N.Y. Aug. 19, 2022).

While a district court retains discretion to determine what constitutes a reasonable fee, "this discretion is not unfettered." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "[W]hen a prevailing party is entitled to attorneys' fees, the district court must abide by the

procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id*. "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.' " *Id*. (citations omitted). This approach is intended to "produce[ ] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (citations and emphasis omitted); *see also Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289-90 (2d Cir. 2011) ("A reasonable hourly rate is what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.") (internal quotation marks and citations omitted).

Plaintiff seeks an hourly rate of $600.00 for Gregory Calliste ("Attorney Calliste"). (*See* Calliste 9/3/25 Aff. ¶ 327.) Considering his background and experience (*see id*. ¶¶ 326-41, and taking into account the so-called *Johnson* factors,[16] the Court reduces the hourly rate for Attorney

---

[16] When determining a reasonable hourly rate for an attorney, courts consider both the prevailing market rates for such legal services, as well as the case-specific factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3. A court does not need to make specific findings as to each factor as long as it considers all of them when setting the fee award. *See Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 709

22

Calliste from $600.00 to $400.00, which is the hourly rate that was requested and awarded to him in the Eastern District of New York last year. *See Smart v. USA Lab. for Hire, Inc.*, No. 20-CV-05594 (TAM), 2024 WL 3313971, at *21 (E.D.N.Y. June 26, 2024), *aff'd*, 2025 WL 1217365 (2d Cir. Apr. 28, 2025).[17]

Plaintiff seeks an hourly rate of $350.00 for Alexandria Jean-Pierre ("Attorney Jean-Pierre"). (*See* Calliste 9/3/25 Aff. ¶ 353.) Considering her background and experience (*see id*. ¶¶ 342-53), and taking into account the so-called *Johnson* factors, the Court finds the hourly rate for Attorney Jean-Pierre to be reasonable. *See Smart*, 2024 WL 3313971 at *2 (awarding Attorney Jean-Pierre $350.00 hourly rate).

Plaintiff seeks an hourly rate of $100.00 for paralegals (*see* Calliste 9/3/25 Aff. ¶ 354), which the Court finds to be reasonable. *See Smart*, 2024 WL 3313971 at *2 (awarding paralegals $100.00 hourly rate).

The Court has reviewed the billing records filed by Plaintiff and finds the hours billed by (*see* Ex. H to Calliste 9/3/25 Aff., ECF No. 90-8) to be reasonable. Accordingly, Plaintiff is entitled to recover the sum of $28,110.00 in attorneys' fees.[18]

---

(2d Cir. 2009) ("*Arbor Hill* did not hold that district courts must recite and make separate findings as to all twelve *Johnson* factors.").

[17] The Court recognizes that Attorney Calliste was awarded a $400.00 hourly rate in this District in 2019. (*See* Calliste 9/3/25 Aff. ¶ 326), and that he is seeking an increase given his additional experience to date and his elevation to partner. However, the Court declines to recommend an hourly rate higher than $400.00 per hour, given the procedural history of this case and its relative lack of complexity.

[18] 39.8 hours for Attorney Calliste at $400.00 per hour (totaling $15,920.00), plus 22.8 hours for Attorney Jean-Pierre at $350.00 per hour (totaling $7,980.00), plus 42.1 hours for paralegals at $100.00 per hour (totaling $4,210.00), for a sum total of $28,110.00.

Finally, Plaintiff seeks recovery of costs of $815.71. (*See* Calliste 9/3/25 Aff. ¶ 364.) Plaintiff provides a spreadsheet reflecting that the costs consist of the filing fee, service of process fees and FedEx charges. (*See* Ex. J to Calliste 9/3/25 Aff., ECF No. 90-10.) The filing fee is a recoverable cost. *See* 28 U.S.C. § 1920(1). The service of process fees and FedEx charges also are recoverable. *See Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) ("It is well-settled in this Circuit that 'attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Thus, Plaintiff is entitled to recover the sum of $815.71 in costs.

Accordingly, the Court recommends that Plaintiff recover $28,110.00 in attorneys' fees and $815.71 in costs, for a total of $28,925.71.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that Plaintiff's motion be GRANTED IN PART and DENIED IN PART and that Plaintiff be awarded, in a default judgment against Q4, $30,000.00 in emotional distress damages, $30,000.00 in punitive damages, $5,000.00 under the NYLL and $28,925.71 in attorneys' fees and costs, for a total of $93,925.71.

Dated:      New York, New York
            December 30, 2025

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*          \*          \*

24

25

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1). Any requests for an extension of time for filing objections must be addressed to Judge Rearden.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).